UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA SEBASTIAN, #731727,

                Petitioner,

v.                                 CASE NO. 2:12-CV-10572
                                 HONORABLE NANCY G. EDMUNDS

DUNCAN MACLAREN,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.**    **Introduction**

Michigan prisoner Dana Sebastian ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is being held in violation of his constitutional rights. Petitioner was convicted of first-degree murder, MICH. COMP. LAWS § 750.316, following a jury trial in the Genesee County Circuit Court and was sentenced to life imprisonment without parole in 2009. In his pleadings, Petitioner raises a Fourth Amendment claim asserting that the police lacked authority to search his residence and the evidence derived from the search should have been suppressed.

Promptly after the filing of a habeas petition, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see also* 28 U.S.C. § 2243. If, after preliminary consideration, the Court determines that the petitioner is not entitled to relief, the Court must summarily dismiss the petition. *Id.*, *see also Allen v. Perini*, 424 F.2d 134, 141 (6th

Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *See Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that Petitioner's habeas claim is meritless and the petition must be denied. The Court also concludes that a certificate of appealability and leave to proceed *in forma pauperis* must be denied.

## II.   Facts and Procedural History

Petitioner's conviction stems from the murder of Kaneco Parson in Grand Blanc, Michigan in 2007. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendant was convicted of murdering Kaneco Parson, whose body was found by Grand Blanc Police Detective Sergeant Matt Simpson in the attached garage of a house that defendant was renting. Simpson entered the home and garage without a warrant at the request of Marlene Powell, an employee of the firm that managed the house as a rental property.
>
> Defendant was delinquent in his rent and was notified that he was required to pay the delinquent rent or vacate the premises within seven days, or eviction proceedings would be initiated. Defendant failed to pay his delinquent rent or vacate the premises within the seven-day period. On February 28, 2007, defendant borrowed Powell's car and failed to return it. Powell notified the police, who located defendant and the car at a bar. When the police searched Powell's car, they found a small quantity of crack cocaine. Powell denied that the cocaine belonged to her. Defendant was arrested for unlawfully driving away an automobile and for possession of cocaine.
>
> After defendant's arrest, Anthony Carollo asked the police to search the house that defendant was renting. Carollo testified that he was concerned that defendant might be keeping drugs in the house. When Detective Simpson inquired about Carollo's authority to consent to a search of the property, Carollo and Powell represented that they were the managers for the property and, according to Detective Simpson, they also stated that

2

defendant had been evicted from the premises. Carollo and Powell denied informing Detective Simpson that defendant had already been evicted and instead claimed that they merely told him that he was in the process of being evicted. In any event, Simpson requested documentation of the eviction, and Carollo and Powell produced the Demand for Possession form, which Simpson interpreted to mean that defendant had been evicted. Therefore, Detective Simpson agreed to search the house with the assistance of a drug-sniffing dog. Carollo used Powell's key to open the house and admit Detective Simpson and the dog inside. Simpson did not find any significant quantities of drugs inside the house. Carollo asked Simpson to search the garage and opened the garage door to allow him inside. Inside the garage, Simpson discovered Parson's dead body wrapped inside a blanket and concealed behind some boxes. Parson had recently rented a room from defendant at the rental property. Simpson thereafter secured the area and obtained a search warrant.

After the police discovered Parson's body, a police officer questioned defendant about his activities during the previous week, but did not mention that a body had been discovered in his garage. Defendant stated that Parson and two other drug dealers had followed him home on February 23, 2007. He further stated that on February 26, 2007, Parson was at his house and got into an argument with two other men, who defendant later identified as Jerell Clement and Jaquan Dudley. Defendant claimed that when he went into the kitchen, he saw Parson's bloody body lying on the floor. The men told defendant not to call the police and would not let defendant help Parson. According to defendant, the men placed Parson's body in a blanket, dragged it into the garage, and told defendant that they would return later for the body. Defendant claimed that the men threatened to kill his son if defendant contacted the police.

Clement and Dudley both testified at defendant's preliminary examination. They both stated that they had gone to defendant's house to look for Parson earlier on the day that Parson's body was discovered because they had not heard from Parson for a few days. No one answered the door, so they walked around the house peering into windows, but did not see anyone. Several of defendant's neighbors saw this activity and one reported it to the police. Clement and Dudley stated that they intended to go back to defendant's house later that evening and force their way inside if defendant did not let them in. Before they left, however, they learned about the discovery of Parson's body from a television news report. After hearing the report, they drove to defendant's house and tried to cross a police cordon. When police officers intercepted them and instructed them to go to the police station to give statements, they tried to evade the police. Officers detained them and found a firearm in their vehicle. The officers learned that Dudley, who had given a false name, had taken the gun from his girlfriend without her permission.

3

After the preliminary examination, defendant moved to suppress the body and other physical evidence discovered as a result of Simpson's warrantless search. The trial court determined that the warrantless search was invalid, but concluded that the evidence would inevitably have been discovered. Therefore, it denied defendant's motion to suppress.

The defense theory at trial was that Dudley and Clement killed Parson. Neither Dudley nor Clement were available at the time of trial. Dudley had been killed before defendant's trial and Clement could not be located. Therefore, their preliminary examination testimony was introduced at trial. According to their testimony, Parson sold cocaine to defendant on credit shortly before he was killed. Clement testified that he tried to contact Parson on February 27, 2007, by calling defendant's telephone, which Parson had previously used to call Clement. Defendant told Clement that Parson had gone to Ohio with some other men. On February 28, 2007, defendant confided to a neighbor that his former drug suppliers were threatening to kill him and his son unless he paid them $3,000 or $4,000. Defendant also told his neighbor that he had just cleaned his house with bleach. The jury convicted defendant of first-degree premeditated murder.

After defendant was convicted, he moved for a new trial and again raised the suppression issue. Defendant also argued for the first time that Clement's and Dudley's preliminary examination testimony should have been suppressed because the discovery of their identities was the fruit of the warrantless search. The trial court again denied the motion, but this time determined that the warrantless search was valid because Detective Simpson reasonably relied on the managers' apparent authority to consent to a search of defendant's home.

*People v. Sebastian*, No. 293486, 2011 WL 3518214, *1-2 (Mich. Ct. App. Aug. 11, 2011)

(unpublished).

Following his conviction and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the Fourth Amendment claim contained in his habeas petition, as well as a jury instruction claim. The Michigan Court of Appeals addressed both claims, denied relief, and affirmed Petitioner's conviction. As to the Fourth Amendment claims, the court ruled that the search was invalid, but the evidence was nonetheless admissible because the victim's body would have been inevitably discovered and the preliminary examination testimony was sufficiently attenuated from the search. *Id.* at *3-9.

4

Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  *See People v. Sebastian*, 490 Mich. 973, 806 N.W.2d 487 (2011).

Petitioner thereafter filed his federal habeas petition, raising the same Fourth Amendment claim presented to the state courts on direct appeal of his conviction.  The Court has not required Respondent to file an answer to the petition.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, governs this case because Petitioner filed his petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06

5

(2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the

6

state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only

with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

**IV.** <u>**Analysis**</u>

Petitioner asserts that he is entitled to habeas relief based upon an alleged violation of the Fourth Amendment. Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976). A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed before trial. *See People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W.2d 357, 358-59 (1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 95 Mich. App. 507, 509, 291 N.W.2d 97, 99 (1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). Consequently, Petitioner is entitled to relief on this issue only if he establishes that he was prevented from litigating the Fourth Amendment issue by a failure

8

of Michigan's procedural mechanism.

Petitioner has not done so.  The record reveals that Petitioner challenged the propriety of the search warrant by filing a motion to suppress the evidence seized from his residence and related testimony and by filing a motion for new trial.  The state trial court denied both motions.  Petitioner then raised his Fourth Amendment issue before the Michigan Court of Appeals, which denied relief on the merits, and before the Michigan Supreme Court, which denied leave to appeal.  Consequently, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment claim and that he received all the process he was due.  Accordingly, his claim challenging the validity of the police search of his residence is not cognizable on habeas review pursuant to *Stone v. Powell*.  Habeas relief is not warranted.

## V.    **Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claim in his petition and the petition must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court must limit its

examination to a threshold inquiry into the underlying merit of the claim.  *Id.* at 336-37.
Having considered the matter, the Court concludes that Petitioner has failed to make a
substantial showing of the denial of a constitutional right as to his habeas claim.  No
certificate of appealability is warranted.  Nor should Petitioner be granted leave to proceed
*in forma pauperis* on appeal as any appeal would be frivolous and cannot be taken in good
faith.  *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and
**DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and that
leave to proceed *in forma pauperis* on appeal is **DENIED**.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  February 17, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record
on February 17, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager